## STUBER v. STUBER.

No. 7764.   Decided May 19, 1952.   (244 P. 2d 650.)

See 27 C. J. S., Divorce, sec. 317. Custody of child, elements affecting. 27 Am. Jur., Infants, sec. 108.

*A. H. Hougaard, Joe P. Bosone,* Salt Lake City, for appellant.

*Benjamin Spence,* Salt Lake City, for respondent.

WADE, Justice.

In March, 1945, Phyllis K. Stuber, respondent herein, obtained a divorce from Harvey T. Stuber, appellant herein. In that suit, respondent was granted the custody of Bruce, their 14 month old son, with $30 per month for his support and $50 per month alimony. Shortly after this divorce was granted, respondent and appellant tried a

reconciliation and after living together a few months found they could live happier apart. Respondent had no money and was obliged to go to work. Appellant had told her that he would not pay the alimony or support money if he had to "rot in jail." For a short time, respondent's mother took care of their child, but she was unable to continue doing this and appellant offered to take the child and have his mother care for it until respondent could care for him herself. Respondent agreed that while he had the care and custody of their son that he would be relieved from paying any of the alimony or support money decreed in the divorce suit if she would be allowed to claim her son as a dependent for income tax purposes. Respondent worked most of the time after her divorce and claimed Bruce as a dependent in her income tax returns until the Collector of Internal Revenue informed her that she was delinquent in her taxes for the years 1948, 1949 and 1950, because appellant had been claiming Bruce also as a dependent and since he was actually supporting their son, she could not claim him as a dependent for income tax purposes. Upon receiving this information, respondent contacted appellant in regard to this matter but he refused to do anything about it, whereupon, on February 13, 1951, respondent filed her affidavit stating that she had voluntarily placed the child in her former husband's custody until she could properly care for him herself, and that she was in a position to do so but appellant refused to surrender his custody to her. She averred that the child lacked proper love and attention and was backward in school and demanded the accumulated alimony which appellant had not paid.

Appellant in his answer on the order to show cause asked for a modification of the divorce decree so that he could be relieved of paying any alimony and for the custody of the child on the ground that the mother was an unfit person to have his custody.

At the hearing, in addition to the facts we have outlined above, it appeared that the respondent had not visited her

child for about two years after the father had taken its custody claiming she thought it would be better for the child not have interference from too many people. Since that time she had been seeing him at least once a month and sometimes oftener. Appellant remarried in 1947 and for a time he lived with his second wife in her apartment while his son remained with his mother. He has another son born to him and his second wife. Since the birth of this second child, he and his entire family have been living with his mother in her home. Appellant's mother has a job and since the birth of his second child his present wife has resumed her former job. He is also away a great deal of the time on his job as brakeman for a railroad company and a baby tender has been employed to take care of the children. Respondent observed on her visits with her son that he was quite thin, nervous and emotional and did not appear to have any interest in things which would normally interest a boy of that age, and was ill a great deal of the time. Respondent testified that the boy did not like school and played truant a great deal, and when the teacher tried to contact the father or stepmother in regard to his behavior at school she received no cooperation from them in remedying the situation. Appellant denied this, but admitted that calls were received from the teacher about his son Bruce's truancy and that his report card showed his reading was unsatisfactory, that he talked too loud in school and did not mix well with playmates.

At the time of the trial, respondent had been living with a married man who was separated from his wife and whom she expected to marry when he had procured a divorce. In the meantime, she wanted to place Bruce with her mother who had a home of her own and who is now able to take the child.

The court found that there had been an agreement between the parties that appellant should have the custody and care of their child Bruce until respondent was in a position to assume that care herself and that while he had

such care and custody the payments of alimony and support money were to be waived provided respondent was allowed to claim her child as a dependent for income tax purposes. Pursuant to this agreement, appellant took the custody and care of the child and did not make any payments of alimony or support money to respondent but claimed the child as his dependent in his income tax returns contrary to the terms of their agreement and refused to reimburse her the amounts she will have to pay the income tax collector as a result of this breach of their agreement. The court also found that respondent was a fit and proper person to have the custody of her child and ordered appellant to pay the amounts respondent would be obliged to pay to the income tax collector because of the disallowance of her claim of Bruce as her dependent and awarded her $100 as attorney's fees.

In refusing to modify the decree as to the custody of the child, the court in its decision stated that it concluded

"* * * from all the evidence in the case and the attitude of the parties at the hearing, and matters which don't appear upon the printed page, that the interests of the minor child would not be observed, [sic] but would be endangered, by awarding its custody to the defendant."

This opinion of the court should be given great weight in evaluating the evidence since the trial judge saw and heard the witnesses and was in a better position than we are to evaluate it. *Walton* v. *Coffman,* 110 Utah 1, 169 P. 2d 97. It concluded that its best interests would be endangered if the change of custody were granted. In view of the fact that it is uncontrovered that the child had to spend a great deal of its daytime hours while away from the influence of any of the adult members of his family, all of them being engaged in work outside the home, and from the fact that he is thin, nervous and unstable and not getting along well in school, the court might well conclude that what the child most needed was

closer attention from a member of the family. Although respondent was not able to take him herself immediately, her mother had a good home and was willing to take him, she was not working and would be able to supervise and care for him while respondent was away at work. Respondent would be able to see him often and take care of any pressing needs. It was agreed by both counsel at the oral argument in this court that since the trial respondent had entered into an apparently advantageous marriage to another man. The fact that she lived with a man whom she expected to marry, although censurable, does not in itself make her an unfit and improper person to have the custody of her child. *Walton* v. *Coffman,* supra. Under such a state of facts, this court will not disturb the judgment of the district court that it would not be beneficial for the child to change its custody from the mother to the father.

Appellant contends that the court erred in granting attorney's fees to respondent for the reason that she initiated the proceedings to regain custody of her child and for accrued alimony and, since she did not prevail as to the full amount of the alimony she asked, the court should have required each party to bear its own costs in view of the fact that the record does not disclose she was unable to pay her own attorney's fees.

The record disclosed that appellant earns about $325 or $350 each month after deductions, whereas respondent earns only $130 per month after deductions. It was appellant's failure to live up to his agreement which forced her to commence this action. There can be no doubt that attorney's fees are allowable in actions of this type. See *Marks* v. *Marks,* 98 Utah 400, 100 P. 2d 207, and cases cited therein. Appellant admits that it is within the court's discretion to grant such fees, but argues that the evidence does not disclose the respondent is unable to bear her own costs and attorney's fees and therefore it does not appear that there was a necessity for such an award. In *Weiss* v. *Weiss,* 111 Utah 353, 179 P. 2d 1005,

1010, this court in discussing the necessity of awards for expenses and attorney's fees in suits for temporary alimony said:

"* * * The statute does not contemplate that awards for expenses of suit or for temporary alimony should be made only in those cases where the 'adverse party' (usually the wife) is destitute or practically so. It contemplates such awards when in the sound discretion of the court the circumstances of the parties are such that in fairness to the wife she should be given financial assistance by her husband * * *."

The rights of the wife to attorney's fees when she is forced to go to court to enforce a divorce decree should not be different from those of one who seeks temporary alimony. The court did not err in granting attorney's fees to respondent.

We have carefully considered appellant's other objections to the court's judgment and find no merit in them.

Affirmed. Costs to respondent.

WOLFE, C. J., and McDONOUGH, CROCKETT and HENRIOD, JJ., concur.