William Arthur NIELSEN, Plaintiff and Respondent,

v.

Sherry Darlene NIELSEN, Defendant and Appellant.

No. 16708.

Supreme Court of Utah.

Oct. 29, 1980.

James A. Valdez, Utah Legal Services, Inc., Ogden, for defendant and appellant.

William K. McGuire, Layton, for plaintiff and respondent.

MAUGHAN, Justice:

Defendant appeals from an order of the district court granting plaintiff's petition to modify a decree of divorce by changing the custody of their minor son from defendant, the mother, to plaintiff, the father. Upon hearing, the trial court ruled that it was in the best interests of the child to transfer his custody to his father. The mother was granted liberal visitation rights, with a strong admonition to the father by the court of the consequences, if the mother's rights were violated. The order of the district court is affirmed.

The minor child, Jimmy, was born December 29, 1973. His parents were separated September 1, 1974. A decree of divorce of the parties was entered March 4, 1976, wherein, defendant was awarded custody. From the time of the divorce until Jimmy was four years old, plaintiff had no contact with him and was derelict in his duty to pay child support. Plaintiff claimed he had been unable to locate defendant, who had been residing in California. Contact was eventually established between the parties, and plaintiff and his present wife brought Jimmy to Utah for a number of visits. During one of these visits, plaintiff filed a petition seeking custody of the child on the ground that the conditions under which Jimmy was living were not in his best interest.[1] Jimmy returned with his mother to California, where they, plaintiff and his

---

1. This proceeding occurred before July 1, 1980, the effective date of the Utah Uniform Child Custody Jurisdiction Act, 1980 Laws of Utah, ch. 41.

wife were tested and psychologically evaluated.

Thereafter, a hearing was conducted. Based on the evidence adduced at the hearing and the recommendation in the psychological evaluation, the trial court changed custody to the father, plaintiff. The report indicated Jimmy was hyperactive and was in need of a parent, who was able to be warm, reactive and supportive to his considerable emotional needs. Neither plaintiff and his wife nor defendant was deemed to be of the personality type, which would be able to relate warmly to the boy. Thus, according to the report, the critical factor became the environment which the two contesting parties could provide. The mother had an unstable history and although professing an intention to change, had not done so. In contrast, plaintiff and his wife were purchasing a home in a middle–class neighborhood, with a large and extended family in the immediate area. This extended family of grandparents, aunts, uncles, and cousins was deemed a likely source of additional support for Jimmy's emotional needs and would aid in providing an environment in which the boy could thrive. The financial stability of plaintiff was cited as an additional positive factor, in that he would have the ability to provide for the child's needs in the future. The report concluded with a strong recommendation that plaintiff and his wife enter into a counseling arrangement to assist them in understanding the emotional needs of young children and to train them in effective parenting.

The evidence, concerning the environment in which Jimmy had lived with his mother in California, sustains the trial court's ruling that it was in the child's best interest to transfer custody to the father. The mother had lived with two different men, neither was the father of the two illegitimate, younger children she had borne. Defendant had worked only spasmodically and primarily lived on welfare. She had been involved in an altercation with one of her paramours in which she sustained injuries requiring hospitalization. This incident was emotionally traumatic to Jimmy. The evidence indicates the instability of the environment was detrimental to Jimmy's development.

In *Trego v. Trego*[2] this court reiterated the controlling principles in a proceeding for modification of a custody award. First, a decree of divorce will not be modified in the absence of a showing of a substantial change of circumstances in accordance with Section 30–3–5, Utah Code Annotated, 1953. Second, the paramount consideration of the court is the welfare of the children, and where custody has been determined, and the children appear to be well adjusted and happy, they should not be compelled to change their home unless there be a substantial reason to effect a change.

In an appellate review, particularly broad discretion is conferred on the trial court concerning child custody incident to a divorce proceeding:

"... A determination of the 'best interests of the child' frequently turns on numerous factors which the trial court is best suited to assess, given its proximity to the parties and the circumstances. Only where trial court action is so flagrantly unjust as to constitute an abuse of discretion should the appellate forum interpose its own judgment."[3]

On appeal defendant contends that the evidence is insufficient either to prove a sufficient change of circumstances to warrant a change of custody or to support a finding that the best interests of the child would be served by the modification of the decree.

The facts recited ante clearly refute these contentions. Defendant has had the care and custody of Jimmy since his infancy, during that time she has failed to establish a stable, supportive environment for her child, which has been to his detriment developmentally. In contrast, since the di-

**2.** Utah, 565 P.2d 74–75 (1977).

**3.** *Jorgensen v. Jorgensen*, Utah, 599 P.2d 510, 511–512 (1979).

vorce, plaintiff has remarried and established a stable, permanent home, which can provide an environment, with the assistance of the extended family, in which Jimmy can thrive. The evidence clearly sustains the ruling of the trial court that it was in the child's best interest to modify the custody provisions in the decree of divorce.

■ Finally, defendant contends that as a matter of policy the court should not have modified custody on the ground plaintiff interfered with defendant's custody immediately prior to the initiation of these present proceedings. On the advice of counsel plaintiff detained Jimmy two days beyond the termination of his visitation period for the purpose of seeking legal intervention prior to his return to California. Defendant cites Section 76–5–303, Utah Code Annotated, 1953, as amended, of the Criminal Code, which deals with the crime of custodial interference, a class B misdemeanor, as establishing the public policy of this State. Section 76–5–303(1), provides:

> "A person, whether a parent or other, is guilty of custodial interference if, without good cause, he takes, entices, conceals or detains a child under the age of sixteen from his parent, guardian, or other lawful custodian;
>
> (a) Knowing he has no legal right to do so; and
>
> (b) With intent to hold the child for a period substantially longer than the visitation or custody period previously awarded by a court of competent jurisdiction."

The actions of plaintiff do not fall within the purview of the statute. The detention was brief and was predicated on a good faith belief of plaintiff that he had good cause, which he substantiated by filing a petition for modification and receiving a temporary restraining order to prevent the child from being removed from this State until the custodial issue could be determined. The matter was expeditiously determined—defendant departed to California with the child, with a court order to arrange a psychological evaluation and to return to Utah for a hearing on the petition.

The acts of plaintiff cannot be deemed an adequate basis to deny him a hearing on his petition, particularly when the paramount concern of the courts is the welfare of the child.

CROCKETT, C. J., and WILKINS and STEWART, JJ., concur.

HALL, Justice (dissenting):

Although the record contains no formal findings of fact and conclusion of law, the evidence presented appears to support the trial judge's apparent conclusion that defendant's lifestyle, both economic and moral, is somewhat inferior to that of the plaintiff. However, the record is devoid of any evidence whatsoever as to the effect, if any, of defendant's lifestyle upon the best interests of Jimmy. Thus, it becomes further apparent that the trial judge simply drew a broad inference, without any evidence in support thereof, that the defendant's lifestyle did, in fact, adversely affect the best interests of her son.

In light of the highly equitable nature of custody proceedings, I deem it an injustice to base an order changing custody on such a broad inference standing alone. Particularly is this so in further light of the content of the psychological reports ordered by the court which support a contrary inference or conclusion.

The clinical report pertaining to Jimmy is anything but critical of defendant's parenting ability. This is evidenced by the following conclusion excerpted therefrom:

> ... Parents of hyperactive children often get more criticism than they deserve. If anything, Jimmy's mother (since she has been the primary parent) deserves credit for "hanging in there" day after day and maintaining as many positive feelings as she has. Certainly Jimmy has not had perfect parenting, but in all likelihood much positive input has failed to get through because of Jimmy's own filtering system.

In his psychological evaluation report pertaining to the parents (including the step–mother), the examiner candidly char-

acterized them as not being "of the personality type which would be able to relate warmly to the boy." Nevertheless, he made a benign recommendation of custody change which he rationalized in the following manner:

> While both William and Debbie Nielsen profess to have not articulated any kind of a philosophy of child rearing, it seems to this examiner that they could be trained and aided considerably by some family and parent counseling to the point where they would learn how to be effective disciplinarians and parents. The Mormon philosophy of strong family ties is one which would provide an environment in which Jimmy could thrive. Furthermore, the financial stability of William, and what appears to be a solid future, is a factor in this recommendation. Whatever the boys [sic] needs are, it is more likely that he would be able to financially provide for them in the future, whereas Sherry is living on limited resources at the moment, and does not seem to have a history which would support an ability to find a job and hold it for any extended period of time.

In contrast to the foregoing, where a change of custody is sought, the law is well established as stated in *Robinson v. Robinson*:[1]

> Notwithstanding the desires and contentions of the parties, the welfare of the children is one of the primary concerns of the courts. [Citation omitted.] In that regard important considerations are the facts that at the time of the divorce they were awarded to the father where they have since resided; and they have known no other home. Where the custody has been determined and the children appear to be comparatively well adjusted and happy, they should not be compelled to change their home unless there appears some substantial reason for doing so. Other circumstances being equal, this requirement would not be satisfied by the mere fact that economic circumstances may be better with the other spouse.

In regard to the relative economic status of the parties, it is of note that for a period of some four years plaintiff failed to visit or support his son in any way, be it financially, morally, spiritually, emotionally, or otherwise. Such total lack of support could not but have been other than a substantial cause of the present circumstances defendant finds herself in and is not to be condoned by permitting it to be now used as a weapon against her. Furthermore, however wonderful it would be for all children to be reared in financial utopia, and however likely it is that the economic lot of *any* child, whether rich or poor, might be enhanced in a richer household, the reality of the matter is that child custody is not to be changed on that ground alone.

In regard to the immoral conduct of the defendant, such behavior is not to be considered in a vacuum. Again, the focus must be upon the best interests of the child, and in the absence of a showing of an adverse effect upon those interests, a basis for a change of custody is not made out. As this Court stated the matter in *Stuber v. Stuber*:[2]

> The fact that she lived with a man whom she expected to marry, although censurable, does not in and of itself make her an unfit and improper person to have the custody of her child.

I am compelled to conclude that there is an insufficient basis in the evidence to warrant the entry of an order changing custody, the effect of which is to deprive Jimmy of the only home he has ever known. I would therefore reverse.

---

1. 15 Utah 2d 293, 391 P.2d 434 (1964).

2. 121 Utah 632, 244 P.2d 650 (1952).