**Carl K. SHIOJI, Plaintiff and Respondent,**

v.

**Terry L. SHIOJI, Defendant and Appellant.**

**No. 18278.**

Supreme Court of Utah.

Sept. 13, 1983.

Bettie J. Marsh, Ogden, for defendant and appellant.

Larrie A. Carmichael, Roy, for plaintiff and respondent.

OAKS, Justice:

This appeal challenges an order changing the custody of minor children. We vacate the order because it is not accompanied by the necessary findings.

A divorce decree granted the mother custody of the parties' two minor daughters, ages 4 and 8. Two months later, the father sought modification of the decree to grant him custody on the grounds that the mother was not giving the children proper care and

she was having her boyfriend stay in the home overnight.

At the hearing, held on January 19, 1982, both parties testified, along with several other witnesses for each side. The testimony concerned the mother's care of the children (including her working schedules and babysitting arrangements), the children's personal and living conditions, and the fact that the mother's boyfriend was sleeping in the home each weekend. The court then interviewed the children in chambers in a session that was recorded but not transcribed. Immediately thereafter, the court stated that the best interests of the children dictated that their custody be given to the father. In announcing this decision, the court referred to the fact that the children were being raised in a condition where they were exposed to an illicit relationship and the mother had taught them to lie by stating that the boyfriend slept on the couch. The unsigned minute entry of that date reads as follows:

> It is of great concern to this court, that the children are raised in a condition where the mother would teach them to lie and that it is all right to live immorally. The Court finds that it is in the best interest of the girls that their custody be given to the father, subject to reasonable visitation, every other week-end.

The signed order, entered February 5, contains no finding of a substantial change of circumstances and no finding on the reason for the change of custody. In fact, the order has no findings whatever. It consists simply of a recital of the proceedings and an order that custody be changed.

On February 2, the mother petitioned the court for modification of its order changing custody, alleging that she "[had] since married" and that "she will no longer work and will thus provide continuous care and control in her home" instead of waking the girls to take them to babysitters at 5:00 a.m. At a hearing on February 11, the mother proffered evidence on these subjects, but the court denied the petition on the basis of insufficient grounds to change the order signed February 5. The mother

has taken a timely appeal from the change of custody and the subsequent refusal to modify it.

In numerous recent decisions, we have reaffirmed and reemphasized the importance of written findings to support orders modifying important provisions of a divorce decree. *E.g., Tuckey v. Tuckey,* Utah, 649 P.2d 88, 90–91 (1982); *Hogge v. Hogge,* Utah, 649 P.2d 51 (1982); *Hutchison v. Hutchison,* Utah, 649 P.2d 38, 42 (1982); *Stoddard v. Stoddard,* Utah, 642 P.2d 743, 744–45 (1982); *Chandler v. West,* Utah, 610 P.2d 1299, 1301 (1980). One of the reasons for this requirement is to explain the basis for the modification so the aggrieved party can determine whether to challenge it and so the appellate court can properly review it on appeal. In an opinion issued after the modification was ordered in this case, we reaffirmed the two-step procedure under which a court hearing a requested change of custody must rule on whether there has been a substantial change of circumstances before the Court reopens and reconsiders the question of the best interests of the child. *Hogge v. Hogge,* 649 P.2d at 53–54. If the custody provisions are modified, both subjects must be supported by appropriate findings.

Although the court's statements on the record and the content of the minute entry are strongly suggestive of at least some of the reasons for the court's opinion on the best interests of the children, neither source constitutes a sufficient compliance with the requirement of findings on the two subjects essential to the relief ordered in this case. Such findings are especially necessary prior to appellate review of a legal question as complex as may be present in this case. *See, e.g.,* B. Hafen, "The Constitutional Status of Marriage, Kinship, and Sexual Privacy—Balancing the Individual and Social Interests," 81 *Mich.L.Rev.* 463 (1983); Note, "Modification of Child Custody Predicated on Cohabitation of the Custodial Parent: *Jarrett v. Jarrett,*" 1981 *B.Y.U.L.Rev.* 169; Annot., 100 A.L.R.3d 625 (1980).

The order of February 5 is vacated, and the case is remanded for the entry of find-

ings consistent with the two-step procedure specified in *Hogge v. Hogge, supra.*

No costs awarded.

HALL, C.J., and STEWART and HOWE, JJ., concur.

DURHAM, Justice (concurring and dissenting):

I concur with the reversal of this judgment but dissent from the remand. The record demonstrates that there is no evidence upon which the trial court could base findings sufficient to justify a change in this custody award. To remand this case unnecessarily prolongs the uncertainty of the placement of these young children and undermines the standards this. Court has established in post-divorce custody proceedings.

The parties to this action were divorced in August of 1981. Approximately two months later, the respondent secured an Order to Show Cause respecting a change of custody, which was heard in January of 1982. At that hearing, the trial court awarded custody to the respondent because the appellant had permitted her boyfriend to remain at her home overnight on a number of weekends. Shortly after that hearing, the appellant petitioned the trial court for a modification of the order changing custody, alleging that she was then married to the boyfriend and was in a position to provide full-time care of the children. This petition was denied at a hearing held on February 11, 1982, at which evidence was proffered by the appellant but not heard. The appellant seeks reversal of both orders, arguing the trial court abused its discretion both in granting the change of custody and in refusing to modify its order. The facts adduced at the hearings will be discussed in detail hereafter.

Although the respondent originally made a number of allegations concerning the adequacy of the appellant's care of their two daughters, ages 8 and 4, at the time of the first hearing, he was unable to demonstrate their accuracy at trial. The sole ground on which the trial judge ordered a change of custody was the overnight presence in the appellant's home of her boyfriend. Both she and the boyfriend testified at trial, and their uncontroverted testimony established that: 1) their relationship was stable, loving, and "serious," 2) the children and the boyfriend had a warm and positive relationship, and 3) any sexual relations between the adults occurred discreetly, privately, and when the children were asleep. The children were described by all witnesses, including the respondent, as well-adjusted and happy. There was no evidence whatsoever of any detrimental effect on the appellant's parenting skills or on the children themselves as a result of the occasional overnight visits. The only indications of any problems came from the appellant's mother, who testified that the girls seemed uncomfortable answering her interrogations about the boyfriend, and from the trial judge, who reported that one of the girls told him in a private, unreported interview that her "mom told us" to say that the boyfriend slept on the couch. I discount both of these items because the record shows that the appellant's mother was extremely hostile to the appellant, and that she undertook extensive probing of the appellant's private life by means of interrogating the children, which, in my view, was highly inappropriate. The trial court's impression that the appellant had asked the children to lie for her is entirely inconsistent with the record, wherein both the appellant and her boyfriend testified candidly about their relationship and made no effort to deceive the court. Further, the appellant denied making any such request to the children and went so far as to offer to take a lie detector test on that issue. Without a record of the court's interview with the children, I am at a loss to explain the origin of this misunderstanding. But the evidence taken as a whole certainly does not establish the appellant was teaching her children to be dishonest as a result of her relationship with her boyfriend.

The appellant does not argue that the evidence in this case fails to meet the threshold requirement of a substantial change in circumstances. Therefore, the

only issue on appeal is whether the evidence demonstrated that a change in custody was "reasonable and necessary" for the welfare and the "best interests" of the children. *See, e.g., Hogge v. Hogge,* Utah, 649 P.2d 51, 55 (1982); U.C.A., 1953, § 30–3–10 (Supp.1981). The applicable standard of review requires that I find the trial court's actions were "so flagrantly unjust as to constitute an abuse of discretion" before we may interpose a contrary judgment. *See Jorgensen v. Jorgensen,* Utah, 599 P.2d 510, 512 (1979).

The "best interests of the child" standard is one which requires a thorough and careful exploration of many factors, including long-term relationships with a primary caretaker, stability in placement, parenting skills and styles, employment and child-care schedules, as well as the presence in the home of other persons (friends, step-parents or other relatives). I believe the trial court erred in basing its order changing custody on the sole factor of an inappropriate overnight visitation practice. While we do not condone such a practice, we have frequently noted such "illicit" relationships must be shown to have a detrimental effect on the interests of the children before they can be the predicate for a deprivation of custody. *See, e.g., Kallas v. Kallas,* Utah, 614 P.2d 641 (1980). The language in Chief Justice Hall's dissent in *Nielsen v. Nielsen,* Utah, 620 P.2d 511 (1980), is entirely applicable to this case:

Although the record contains no formal findings of fact and conclusion of law, the evidence presented appears to support the trial judge's apparent conclusion that defendant's lifestyle, both economic and moral, is somewhat inferior to that of the plaintiff. However, the record is devoid of any evidence whatsoever as to the effect, if any, of defendant's lifestyle upon the best interests of Jimmy. Thus, it becomes further apparent that the trial judge simply drew a broad inference, without any evidence in support thereof, that the defendant's lifestyle did, in fact, adversely affect the best interests of her son.

In light of the highly equitable nature of custody proceedings, I deem it an injustice to base an order changing custody on such a broad inference standing alone. *Id.* at 513 (Hall, C.J., dissenting). Chief Justice Hall continued:

In regard to the immoral conduct of the defendant, such behavior is not to be considered in a vacuum. Again, the focus must be upon the best interests of the child, and in the absence of a showing of an adverse effect upon those interests, a basis for a change of custody is not made out. As this Court stated the matter in *Stuber v. Stuber,* [121 Utah 632, 244 P.2d 650 (1952)]:

The fact that she lived with a man whom she expected to marry, although censurable, does not in and of itself make her an unfit and improper person to have the custody of her child.

*Id.* at 514 (Hall, C.J., dissenting). *See also, Robinson v. Robinson,* 15 Utah 2d 293, 391 P.2d 434 (1964).

The injustice which can result from the application of a broad inference such as that discussed by Chief Justice Hall in *Nielsen, supra,* is particularly evident in this case. The only evidence in the record about the respondent's care of the children is that he must be gone from home five days a week from 6:00 a.m. until 5:00 p.m. for his employment. No other evidence regarding the specifics of the children's care was offered, such as the home and neighborhood in which they would live and be cared for, the schools they would attend, or even the identity of the caretakers. In addition, on her petition to modify, the appellant offered to prove, and it appears to have been undisputed, that she had married her boyfriend and would terminate her employment to give full-time care to the children. As we said in *Hogge v. Hogge, supra,* "the extent to which each contesting parent could care for the child personally is an appropriate consideration for the court." 649 P.2d at 56 (citation omitted). The trial court merely stated, without explanation, that neither of those circumstances "remedies the problem," and it does not appear

that the court considered in either of its decisions any factor other than the appellant's "illicit" relationship. That fact, standing alone, was insufficient to warrant a change of custody. There is no evidence that it is in the best interests of the children to be in the respondent's custody. In fact, what evidence there is about the relative care each party has given and can give the children, clearly preponderates in favor of the appellant. Thus, it was an abuse of discretion for the trial court to order a change of custody.

I would therefore reverse the order of the trial court outright with no remand.