*In re* CUSTODY OF MARK THOMPSON, a Minor.—(ANDREW J. THOMPSON, Petitioner-Appellee, *v.* MARY LYNNE THOMPSON, Respondent-Appellant.)

Third District   Nos. 79-494, 79-398 cons.

Opinion filed April 9, 1980.

Matthew A. Maloney, of Pierson and Maloney, of Princeton, for appellant.

John V. Hanson, of Hanson & Hanson, of Morris, for appellee.

Mr. JUSTICE SCOTT delivered the opinion of the court:

This is an appeal from an order of the circuit court of Grundy County, transferring custody of the minor child of the parties from the mother to the father.

On July 26, 1976, petitioner, Andrew J. Thompson, and respondent, Mary Lynne Thompson, were divorced in Bureau County, Illinois. Custody of the minor child of the parties, Mark Thompson, was awarded to the respondent.

On October 31, 1978, the petitioner filed a petition to enroll the divorce decree in Grundy County. He alleged that the respondent had removed their minor child from the State of Illinois without leave of court and had refused him visitation.

On October 31, 1978, without notice to the respondent, an order was entered enrolling the decree, fixing an appeal date, and a date for hearing on a contempt citation for refusing petitioner visitation. A temporary restraining order was also entered, without notice, granting physical custody of Mark, the five-year-old son of the parties, to petitioner.

On November 29, 1978, a petition and temporary restraining order were served on the respondent. On January 30, 1979, she filed a petition to modify the decree of divorce, wherein she asked permission to remove the child to the State of Texas. On February 5, 1979, petitioner filed a petition to modify asking that he be granted custody of the child. Hearing on all matters was held February 13, 1979.

The petitioner called Ruby Franklin, a counselling psychologist, as a witness. She had investigated the child's psychological and emotional condition. She had also given him projective tests, consisting of a series of pictures into which the child projects himself and tells a story. Franklin testified that the child has a real fear of monsters which is the result of not having monsters explained to him. There is a correlation between his home environment and his response to the pictures. The child apparently had been left alone and has a great fear of being alone. Franklin also testified that continuation of the environment would affect the child further and that he should remain with his father (the petitioner) and stepmother.

The respondent testified under section 60 of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 60.) There had been no hearing on the custody issue at the time of the divorce since the parties had agreed that she would have custody. She had told her husband that she intended to move to Texas one month prior to the time she made the move. The petitioner offered her his Master Charge card so that she could pay for the move.

The respondent and the son initially lived with friends in Texas but subsequently rented a house and still later an apartment. While in Texas the respondent attempted to have the child support increased. Ultimately, as the result of financial difficulties, she sent Mark to Princeton, Illinois, to live with her mother.

The petitioner, in his own behalf, testified that he is employed as vice

president at the First National Bank of Morris. He further testified that he took Mark from the respondent's mother on October 27, 1979, and that prior to this time he had not seen his son since May 15, 1979.

The petitioner admitted that he told the respondent that it was agreeable with him if she moved to Texas and took their son with her. He further testified that Mark had lived with him for a period of time prior to respondent's move to Texas. He testified that the respondent had not only threatened him and his present wife, Kristina, but had threatened to harm herself if Mark were not returned to her.

It is the petitioner's opinion that he gets along well with his son and feels that the child's behavior has improved since he has been living in his home. He admitted that he did not tell the respondent about the child's bad habits. It was established that the petitioner has a gross income of $20,000 per year.

Kristina Thompson, petitioner's present wife, testified that Mark behaved poorly when he first lived with them, but that he had improved greatly. When Mark first lived with them he could not sit quietly, ate with his hands, wanted only junk food, and wanted to watch television all the time.

The respondent testified that after the divorce the parties stayed apart for six months, but they began living together on weekends during her ex-husband's visitation with Mark and had sexual relations. The respondent further stated that during a telephone conversation she told petitioner that she knew he was to be married and that she informed him of her plans to move to Texas and that he assured her he wouldn't give her any problems. After the move Mark returned to Illinois for visitation with the petitioner, and she was informed in a telephone conversation with him that the child was well adjusted and well mannered and that she was doing a good job raising him.

She further testified that during the weekend visitations she had become pregnant by the petitioner and that he advised an abortion because she could not raise two children by herself and that he would and did provide money for the abortion.

The respondent further stated that her gross income is $8,200 per year and that she sent her child, Mark, to her mother because she couldn't support him and that she also could not pay her attorney.

The trial court then interviewed the child, who stated he had seen a black monster but knew there is no such thing as a monster; that he knew he had lived in Texas with his mother, but that he doesn't call her mother anymore because she isn't nice to him, and that she could be nicer. During the interview the child informed the court that his father told him to say those things about his mother and that he was also told by his father that he could have only one mother, namely Kristina, petitioner's present wife.

The trial court subsequently ordered the parties to undergo examination by an independent psychologist. The psychologist, after interviewing the parties, found that both of them could provide an adequate home for Mark, and also found that Mark required psychotherapy.

After the report by the psychologist, the trial court ordered that the custody of Mark be transferred to the petitioner.

On appeal respondent raises the following issues: (1) whether the decision of the trial court was against the manifest weight of the evidence in finding that Mark's home environment with her seriously endangered his mental or emotional health; (2) whether the trial court erred in considering her previous abortion insofar as the same affected Mark; (3) whether the trial court ignored the statutory mandate by considering Mark's integration into petitioner's home without her consent; (4) whether the trial court applied the appropriate statutory standards in changing custody; (5) whether the trial court erred in failing to order the petitioner to pay her attorney fees; (6) whether the trial court's denial of her petition for leave to remove Mark from Illinois was against the manifest weight of the evidence and an abuse of discretion and should be reversed.

Directing our attention to the issues we note that on October 1, 1977, the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1977, ch. 40, par. 600 *et seq.*) became effective. Prior to the effective date, a party seeking a change in custody had to prove that there had been a material change in the circumstances of either parent which affected the well-being of the child. (*Arden v. Arden* (1960), 25 Ill. App. 2d 181, 166 N.E.2d 111.) The Illinois Marriage and Dissolution of Marriage Act is a codification of that rule with the added guidelines of, to-wit, the existence of any agreement between the parties, integration into the family of the petitioner with the consent of the custodian, and a finding as to whether the child's present environment seriously endangers its physical, mental, moral or emotional health. Ill. Rev. Stat. 1977, ch. 40, par. 610(b).

The trial court in the instant case found that there had been a change of circumstances which required a modification of the earlier custody order. The trial court considered respondent's actions in removing Mark from Illinois to Texas and returning him to Illinois to live with her mother. It then found that her actions seriously endangered the "mental or emotional health of the child and that the harm if any which may be caused by a change of environment to the custody of the father is outweighed by the advantages of that change to the child." In addition the trial court considered the criteria for custody listed in section 602(a) and the respondent's abortion, despite the prohibition of section 602(b) (Ill. Rev. Stat. 1977, ch. 40, par. 602(b)).

■■ We cannot rule that the decision of the trial court was against the

manifest weight of the evidence. There can be no doubt that the circumstances of the parties changed since the time of the original custody order. In addition, the child has manifested a psychological condition which requires therapy.

Both parents can provide an adequate home for the child and he appears happy in both homes. Therefore, we must consider whether any harm which might be caused by changing Mark's environment is outweighed by its advantages to him. The respondent-mother is unable to provide a stable home for Mark for several reasons, not the least of which are financial ones. The petitioner, since his remarriage, can provide a more stable home for Mark, and he also has the financial means to provide the necessary psychotherapy. Since Mark's psychological condition may arise from a lack of a stable home environment, we find that any harm resulting from a change of home environment is outweighed by its advantages.

Respondent also complains that the trial court erroneously considered evidence of an abortion in determining whether it should order a change of custody. She argues that this was contrary to the prohibition of section 602(b) of the Act, and with this contention we agree. However, on review we must determine whether the trial court reached a proper decision. If the decision was proper, even though the court may have considered improper evidence in reaching that decision, we shall affirm. *People ex rel. Rathbun v. Rathbun* (1977), 48 Ill. App. 3d 328, 362 N.E.2d 1136.

Respondent also asserts that the trial court erred in considering Mark's integration into the petitioner's home. She argues that this should be considered only when the custodial parent consents to the integration into the home of the noncustodial parent. She argues that this provision was enacted to prevent the noncustodial parent from benefitting from a wrongful seizure of a minor child.

■■ Normally we would agree with this assertion; however, in the instant case we believe that the trial court determined that Mark's integration into petitioner's home would not have occurred except for the respondent's actions. Therefore, we find that the integration was not considered separately but as a part of the home environment also provided by respondent, and consequently we find no error.

It is next argued by the respondent that the trial court could not have found that her home environment endangered Mark's health, as required by statute, and then found that she was entitled to liberal visitation, including a month-long visit at her home. We do not agree, because even though the trial court found that the home environment was not sufficiently stable for Mark's needs, it did not find that respondent was

unfit to have any control over Mark. We believe that it is not only right but desirable that the parents and the child continue to know each other and are able to converse and express their views concerning pertinent matters. In order that they may do this, they must be able to visit with each other over extended periods of time. Even though a child may have needs which cannot be met while living with one parent, it does not follow that he will be harmed by visiting that parent for a month. We do not interpret the trial court's phraseology "endangering of his [the child's] health" to mean that Mark would be in imminent danger if periodically permitted to be in the custody of his mother for visitation purposes. Based upon an examination of the evidence we interpret the court's remark to mean that the mother cannot and has not been able to provide the child with stability and the requisite tools necessary to cope with life and that custody with the father subject to visitation rights is preferable.

█ It is next argued that the trial court erred in not ordering the payment of respondent's attorney fees. The only evidence we find in the record concerning the financial condition of the parties is a statement of their gross incomes. With the exception of the respondent's statement there was no proof of respondent's inability to pay attorney fees, and hence no error was committed.

Lastly, it is argued that the trial court improperly denied respondent's petition for leave to remove Mark from Illinois. Since we find no error in the change of custody, we shall not consider the denial of her petition.

██ █ The picture painted by the parties herein is a regrettable one in that it is apparent that neither of them are unfit parents as far as custody is concerned and the conduct of the petitioner has been less than laudable, while the conduct and life style of the respondent has not provided stability for the minor child, but in fact has resulted in the child having some psychological problems. It is elementary that this court, as well as the trial court, is primarily concerned with the best interests of the child of the parties. Once a trial court makes a decision as to change of custody, such decision will be disturbed on appeal only if it is contrary to the manifest weight of the evidence or constitutes an abuse of discretion. (See *In re Custody of Russell* (1979), 80 Ill. App. 3d 41, 399 N.E.2d 212.) We cannot find that in the instant case there was an abuse of discretion or that the trial court's decision was against the manifest weight of the evidence.

For the reasons stated above, the judgment of the circuit court of Grundy County is hereby affirmed.

Affirmed.

ALLOY, P. J., and STOUDER, J., concur.