In re CUSTODY OF ROBIN LEIGH FARM et al.—(ROBERT K. FARM, Petitioner-Appellant, v. ELIZABETH KAY FARM, Respondent-Appellee.)

Third District   No. 80-403

Opinion filed February 19, 1981.

James R. Standard, of Standard & Tenold, of Monmouth, for appellant.

Paul D. Baertschi, of West Central Illinois Legal Assistance, of Galesburg, for appellee.

Mr. JUSTICE STOUDER delivered the opinion of the court:

This is an appeal of the order of the Circuit Court of Warren County denying Robert Farm's petition for a change of custody of his minor children, Robin Leigh and Douglas Edward. Robin has become emancipated during the pendency of this appeal, so only Douglas' custody remains in issue.

The parties were divorced on January 16, 1974. That decree awarded custody of their five children—Rodney, Brenda, Robin, Lori, and Douglas—to their mother, Elizabeth Farm. Since then, the parties agreed separately to transfer custody of Rodney and Lori to Robert in 1975 and 1978 respectively. At the time of Robert's petition, Brenda was emancipated and attending Augustana College.

The court heard testimony on October 2, 1979, and on November 2, 1979, regarding the merits of Robert's petition. The evidence tended to demonstrate that, while Elizabeth's housekeeping and physical home environment were average at best, her children's environment had substantially increased in quality since the divorce. The court found that although neither of the parties' social conduct was beyond reproach, such conduct had not significantly deteriorated since the divorce to adversely affect the best interests of the children. The court also found that neither Elizabeth nor Robert had provided sufficient parental supervision over Robin and Lori respectively; thus, a change in custody was unwarranted.

Robert appeals the trial court's order denying his petition for a change of custody on the grounds that the trial judge disregarded certain testimony tending to demonstrate that a substantial diminution in the quality of Douglas' environment had occurred and thus the court abused its discretion. Although Robert admits that while any isolated circumstance showing deterioration of Elizabeth's home may not be sufficient to

modify the custody provision of the divorce decree, he argues that the combination of such circumstances produces a synergistic effect that requires this court to reverse the trial court's decision in order to protect Douglas' best interest.

According to section 610(b) of the Marriage and Dissolution of Marriage Act, the trial court shall not modify a prior custody judgment unless it finds that "a change has occurred in the circumstances of the child or his custodian and that the modification is necessary to serve the best interests of the child." (Ill. Rev. Stat. 1979, ch. 40, par. 610(b).) The prior custodian shall be retained unless "the child's present environment endangers his physical, mental, moral, or emotional health and the harm likely to be caused by a change of environment is outweighed by its advantages to him." (Ill. Rev. Stat. 1979, ch. 40, par. 610(b)(3).) A reviewing court will disturb the trial court's decision with respect to a child's custody only when the decision was against the manifest weight of the evidence or the trial court obviously abused its discretion. *Rippon v. Rippon* (1978), 64 Ill. App. 3d 465, 381 N.E.2d 70.

Although section 610(b) first became effective on October 1, 1977, the section is founded on long established standards applicable to petitions for modification of custody. The custody decision in the divorce decree is *res judicata* as to the then existing facts, and the petitioner must affirmatively demonstrate the existence of new conditions or changed circumstances in the custodial parent's home environment to warrant a change in custody. (*Nye v. Nye* (1952), 411 Ill. 408, 105 N.E.2d 300.) Of course, the "guiding principle in custody adjudications is the best interests of the child". *Jarrett v. Jarrett* (1979), 78 Ill. 2d 337, 344, 400 N.E.2d 421, 423.

The new act does change a child custody adjudication in two important respects: (1) section 610(b) explicitly recognizes that any change in custody is inherently harmful to the child and, accordingly, the trial court must find that the advantages of the proposed environment outweigh such inherent harm; and (2) the custodian's and the proposed custodian's conduct is irrelevant in determining the child's best interests unless such conduct affects that person's relationship with the child. (Ill. Rev. Stat. 1979, ch. 40, par. 602(b).) The best interest of the child is determined as follows:

"(a) The court shall determine custody in accordance with the best interest of the child. The court shall consider all relevant factors including:

(1) the wishes of the child's parent or parents as to his custody;

(2) the wishes of the child as to his custodian;

(3) the interaction and interrelationship of the child with his

parent or parents, his siblings and any other person who may significantly affect the child's best interest;

(4) the child's adjustment to his home, school and community;

(5) the mental and physical health of all individuals involved; and

(6) the physical violence or threat of physical violence by the child's potential custodian, whether directed against the child or directed against another person but witnessed by the child." Ill. Rev. Stat. 1979, ch. 40, par. 602(a).

■■ Looking at the entire record, we cannot say that the trial court's decision to keep Elizabeth as the custodian of Robin and Douglas (now only Douglas) was contrary to the manifest weight of the evidence or constituted an abuse of discretion. Several of the changed conditions in Douglas' home environment were improvements, *i.e.*, his dwelling and his general appearance. Moreover, although Douglas' scholastic performance was average at best, his teacher testified that he worked hard and developed excellent social relations with his teachers and peers. Also, Elizabeth's lack of personally generated income did not seriously affect the general condition or appearance of her children. While Elizabeth could have been more insistent that Douglas wear his prescription eyeglasses, she did take him to the family optometrist to purchase new prescription lenses shortly before the hearing date.

All in all, we cannot agree with Robert's contention that any substantial diminution took place in the quality of Douglas' environment which seriously endangered his mental, moral, or emotional health. Accordingly, we affirm the order of the Circuit Court of Warren County denying Robert's petition for a change of custody.

Affirmed.

ALLOY and HEIPLE, JJ., concur.