*In re* CUSTODY OF APRIL SALOGA *et al.*, Minors.—(WILLIAM SALOGA, Petitioner-Appellant, *v.* VICKIE SALOGA, Respondent Appellee.)

Second District    No. 80-557

Opinion filed May 28, 1981.

Paul A. Lewis, of Alschulter, Putnam, McWethy, Funkey & Grometer, of Aurora, for appellant.

Robert M. Foote, of Reid, Ochsenschlager, Murphy & Hupp, of Aurora, for appellee.

Mr. JUSTICE UNVERZAGT delivered the opinion of the court:

William Saloga appeals from the judgment of the circuit court of Kane County denying his petition for change of custody of his minor children, April and William, from their mother, Vickie, to himself. It appears appropriate to recite the facts in some detail for their bearing on the issues raised in the custody petition.

William and Vickie were divorced in May of 1978 while they were living in Florida, where William was in the Air Force. The divorce decree gave custody of the children, April, age 8, and William II, age 5, to the mother and provided that William should pay $300 a month support for the children. At the time of the divorce, William was in the process of receiving his discharge from the Air Force. During the waiting period Vickie and the two minor children resided in the marital home. Following William's discharge from the Air Force and the sale of the marital home, Vickie and the children returned to Aurora, Illinois, and lived with her parents. William went into training for a job with American Airlines as a pilot and while he was training in Texas, in February 1979, he was told by Vickie over the telephone that she intended to move to Las Vegas with the two children since she was going to be married to a man who resided there. William told Vickie that he would not pay any more child support money if she removed the children to Las Vegas because he could not visit them. She moved to Las Vegas with the two children in February of 1979 and resided in the home of her friend with the two children. During the period the children were in Las Vegas, from February to July of 1979, Vickie did not receive any child-support money from William.

In July of 1979, William went to Las Vegas and brought the children back to his house in Sugar Grove for a visit. He had developed a relationship with a woman, and she and the children became friends. In August of 1979, William phoned Vickie in Las Vegas to make arrangements to return the children to Las Vegas. William testified that Vickie indicated to him that she did not want the children returned to Las Vegas and that they should continue to live with him in his house in Sugar Grove and that she was going to return soon to Illinois. William's testimony was

to the effect that Vickie told him he should take the children indefinitely. Vickie testified she told William in late August of 1979 that he should "keep the children temporarily because I was coming back to Illinois." In September, William gave Vickie money to return to Illinois. She testified she then returned to Illinois but did not immediately take the children back because of financial difficulties due to the fact William had not given her any child-support during the previous six months when she was in Las Vegas. During that period from July of 1979 to the filing of the petition for change of custody in January of 1980, the children continued to reside in William's house in Sugar Grove. The main part of their care, especially while William was absent piloting aircraft, was assumed by his friend or her relatives. Vickie testified that she demanded that the children be returned to her in December of 1979, and thought that William had agreed. Instead of returning the children, in January of 1980, William filed a petition to change his temporary custody of the children to permanent custody on the ground that they had become integrated into his "family" with the consent of Vickie, thus meeting the requirements for change of custody set forth in section 610(b)(2) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1979, ch. 40, par. 610(b)(2)). At the time the petition was filed, William was not married.

Shortly after she returned to Aurora, Vickie began dating a man she has been acquainted with previously and they became engaged. Her friend also became very friendly with the children when he saw them on their visits with Vickie. While the petition for modification of the custody of the children was filed in January of 1980 and answered by Vickie promptly, it was not heard immediately, and during the pendency of the hearing the motion of William for temporary custody of the children was allowed, with visitation rights to Vickie. The hearing was set for April of 1980. The day before the hearing, Vickie was married.

After hearing testimony and the arguments of counsel, the trial court denied the petition to modify the custody of the children.

In this appeal the petitioner contends:

(1) that the manifest weight of the evidence shows that the "change of circumstances" and the "best interests" requirements for change of custody under section 610(b) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1979, ch. 40, par. 610(b)) were met, therefore the trial court erred in not granting the custody petition on that ground; (2) that the manifest weight of the evidence showed that the children were integrated into the family of the petitioner, William, with the consent of the respondent; (3) that the trial court applied the wrong standard in making a determination under section 610(b)(3) of the Illinois Marriage and Dissolution of Marriage Act with regard to the danger to the

children in their present environment and that the manifest weight of the evidence showed that the harm to them from their present environment outweighed the harm likely to result from a change of custody.

Section 610(b) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1979, ch. 40, par. 610(b)) reads as follows:

"(b) The court shall not modify a prior custody judgment unless it finds, upon the basis of facts that have arisen since the prior judgment or that were unknown to the court at the time of entry of the prior judgment, that a change has occurred in the circumstances of the child or his custodian and that the modification is necessary to serve the best interest of the child. In applying these standards the court shall retain the custodian appointed pursuant to the prior judgment unless:

(1) the custodian agrees to the modification;

(2) the child has been integrated into the family of the petitioner with the consent of the custodian; or

(3) the child's present environment endangers seriously his physical, mental, moral or emotional health and the harm likely to be caused by a change of environment is outweighed by its advantages to him."

Bearing in mind the facts of this case, it does not appear to us that the change of circumstances of the custodian is so drastic as compared with her original circumstances as to support a change of custody on that ground. At the time of the divorce Vickie was living in Florida with her two children in a house about to be sold by reason of the divorce. At the time of the present custody hearing, she was newly married and living with her husband in his home in Geneva. After the hearing, the children returned to her custody and lived with her and continued to do so in her home in Geneva. While she had, during the interim, lived with the children in the home of her friend in Las Vegas under the supposition that he would marry her, we do not consider this interlude as being a change we should consider here since Vickie terminated her relationship with that friend some six to eight months before the petitioner brought his suit to modify the custody judgment. There is no allegation that the respondent is an unfit mother by reason of this interlude, and since the present situation of the respondent appears to compare favorably with that existing at the time she was appointed custodian, we see no significance in the change of circumstances so far as it pertains to the question of custody. In *In re Custody of Ehr* (1979), 77 Ill. App. 3d 540, the mother, who was also the custodian, following the divorce allegedly had promiscuous relations with at least two men in her home; she had allegedly smoked marijuana, and the living quarters where she and the child dwelt were severely crowded. It was also charged that she lived a vagabond life, creating an

environment harmful to the child. It was shown by the testimony, however, that the alleged activities harmful to the child had taken place a year or more prior to the custody hearing and that the respondent had in the meantime married and at the time of the custody hearing was living in an adequate home in a stable environment. On appeal, this court denied the petition for change of custody since the child's *present* environment was not shown to be harmful to it. The court in *In re Custody of LaMarca* (1979), 78 Ill. App. 3d 26, likewise refused to award custody to the father on the ground that following the divorce the mother (respondent) had remarried and her present husband had in the past been an alcoholic. The court found that presently the step-father was making a successful effort to overcome his drinking habit and that the child was not endangered by her *present* environment. While, therefore, the circumstances of the custodian's life had changed since the divorce, they appear to have changed for the better, and such change is not a ground for modifying the custody order.

■■ Nor do we see any basis for William's contention that the children had been integrated into his "family" during his temporary custody of them. Actually, William had no "family" at that time into which the children could be integrated. He was not married during that time and his friend, William's parents and his sister, cannot be considered as a "family" for the purposes of integration of the children. In any event, all the testimony shows is that William had the children in his care (or his friend's care) from sometime late in July to December of 1979, and that he placed them in a school near his home in Sugar Grove. However, this attempt at "integration" was not consented to by Vickie who, according to her testimony, was constrained by financial considerations to leave the children with William for a short time after she returned to Aurora, but when she got herself established in December of 1979, immediately demanded that the children be returned to her. During that period William was not always home because of his flight schedule, and the responsibility for the day-to-day care of the children was divided. It does not appear that they were residing in any one "family." From the record it would appear very probable that the main responsibility of caring for the children during this period was William's friend's, and while there is no evidence to suggest that she was anything but a kind and conscientious person in her relationship with the children, the relationship can hardly be called a "family" one. The most that can be said on the question of integration is that the children were not residing with Vickie during this period—evidence is lacking that Vickie gave consent to anything more than temporary custody by William immediately after she returned to Aurora from Las Vegas. As William had not given her any money for child support for some months prior to this, it is reasonable to believe that she was in financial straits at that time. On the point of integration, therefore, we do

not find the trial court's ruling to be against the manifest weight of the evidence. The cases of *In re Custody of Burnett* (1979), 75 Ill. App. 3d 998, and *In re Custody of Thompson* (1980), 83 Ill. App. 3d 97, are clearly distinguishable. In *Burnett*, the child was living in the home of the petitioner with his wife for some 22 months before the petition to change the custody was heard. Moreover, the integration question was not settled by that decision but was merely remanded. *Thompson* is inapposite because there the court found a material change of circumstances to the detriment of the child, and this was entangled with the integration issue.

■■ The petitioner invokes the language of section 610(b)(3) of the Illinois Marriage and Dissolution of Marriage Act, arguing that the trial court erred in finding that none of the conditions set out therein were applicable under the circumstances. The petitioner contended at the custody hearing that it would be harmful to the children to remove them from his temporary custody, thus subjecting them to another change of environment. However, by the passage of time, since the children have now been residing with Vickie pursuant to the trial court's order since July 14, 1980, this argument is no longer valid. The petitioner also contends that the evidence shows the environment provided by the respondent presents a "mental, moral and emotional danger" to the children. The petitioner's argument in support of this contention is unconvincing. In the first place, the reference to Vickie's sojourn with her former friend in Las Vegas is strictly in the past and has nothing to do with her environment at the time of the custody hearing, and the only evidence as to the effect of her relationship with that friend on the children came from Vicki herself, who testified that she thought it best to remove her children from his home since he was inclined to favor his own children over hers. There is no indication the children were mistreated or exposed to unhealthy influences during this time, and any possibility of moral or psychological harm to them through an illicit relationship had ended some months before the custody hearing began. Nor is this an argument that can be entertained on behalf of William since he was living with a friend and unmarried during the entire period the children lived with him, from July 1979 onward. There is little to choose between the parties as to the negative aspects of an extramarital relationship on the children nor as an indication of instability on the part of either parent. Actually, however, there was little or no evidence that any person at any time caused the children any harm and the court's reaction at the end of the hearing as to the parties themselves was that "you are four nice people."

In *In re Custody of Harne* (1979), 77 Ill. 2d 414, our supreme court in discussing the interpretation to be given to section 610(b) of the Illinois Marriage and Dissolution of Marriage Act, on which the appellate courts had disagreed, determined that a positive finding as to the existence of

condition (1), (2), or (3) of section 610(b) was a prerequisite to a change of custodian. In the case we consider here, the court expressly stated that it did not consider any of these three conditions existed; therefore, these conditions were not applicable in the determination of custody.

We find some similarity in this case to the case of *In re Custody of Farm* (1981), 93 Ill. App. 3d 332. In that case, it appeared that the mother was the custodian of the minor children after the divorce and the husband petitioned for a change of custody to him based on allegations of poor housekeeping, lack of parental supervision and possible improper social conduct. However, as in the case before us, the court found that faults and inadequacies of the custodian in the past, which were apparently improved at the time of the custody hearing, should not be considered a sufficient basis for change in custody. While there had been changes in the environment of the minor children since the divorce, they were changes for the better, and since the present environment provided by the custodian did not endanger their physical, mental or moral health and the harm likely to be caused by a change of environment might outweigh any apparent advantage, the present custodian should retain custody.

Similar is the case of *In re Marriage of Batchelor* (1980), 89 Ill. App. 3d 781. In that case, the mother, as in the case before us, had moved several times and shortly prior to the custody hearing had been married to a man the children had never met. Nevertheless, the trial court retained custody in the mother, finding that the consideration for change of custody under section 610(b)(3) had not been met.

The petitioner, however, contends that the "pattern" of respondent's behavior in the past, moving several times, living with the children in the home of a man to whom she was not married, then marrying another man, indicates an *attitude* or "life style" not conducive to a stable environment for the children. We believe, however, that the words of the statute that "the child's present environment endangers seriously his physical, mental, moral or emotional health" (section 610(b)(3)) require considerably more than an inference of poor judgment or superficial character drawn from past behavior, as a basis for change of custody. In this case there was never any evidence of physical or mental harm to the children and any moral question *vis-a-vis Jarrett v. Jarrett* (1979), 78 Ill. 2d 337, is now eliminated by Vickie's marriage. Vickie testified that she had now quit her previous employment and would stay home to take care of the children. The testimony of both Vickie and her husband indicated a good and warm relationship between both of them and the children and while the evidence likewise showed a good relationship between the children and William's friend (who has since married William) there was clearly no evidence of possible harm to the children from the present custody.

The requirements of subparagraph (3) of section 610(b) of the

Marriage Act were clearly not met, and we agree with the trial court's finding that none of the conditions of section 610(b) applied to the case.

The judgment of the circuit court of Kane County is affirmed.

Judgment affirmed.

HOPF and VAN DEUSEN, JJ., concur.