## KRUER *v.* KRUER.

1. DIVORCE—MODIFICATION OF DECREE—CUSTODY OF CHILDREN—FITNESS OF MOTHER.

Order denying husband's petition to modify decree of divorce so as to award him the custody of 10-year-old girl and 9- and 7-year-old boys because the children were embarrassed by being required to live with a fourth child, conceived out of wedlock but born in wedlock, is affirmed, where mother's remarriage has been followed by consistent and proper home life, testimony indicates her excellent care of the children and the severance from their mother now would be a very grave disturbance of their happy home life.

2. SAME—CUSTODY OF CHILDREN—PREJUDICE.

Denial of husband's petition to modify decree of divorce as to custody of the parties' children, 10, 9 and 7 years of age, because of their embarrassment by being required to live with their mother's fourth child who was conceived out of wedlock although born after her remarriage, is made without prejudice to his right to renew the petition in the event that future facts and conditions warrant his so doing.

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] Generally as to modification of decree as to custody of children, see 17 Am Jur, Divorce and Separation § 684.

3. Same—Costs—Modification of Decree.

>No costs are awarded on affirmance of order denying husband's
> petition to modify decree of divorce as to custody of the
> children of the parties, where no costs are asked.

Appeal from Oceana; Pugsley (Earl C.), J. Submitted June 11, 1952. (Docket No. 65, Calendar No. 45,519.) Decided October 6, 1952.

Divorce proceedings between Dorothy J. Kruer and George Kruer. Petition of defendant for modification of decree as to custody of children. Petition dismissed. Defendant appeals. Affirmed.

*Stewart J. Roche* and *Warner, Norcross & Judd* (*George S. Norcross* and *Harold S. Sawyer*, of counsel), for plaintiff.

*Arnold R. Levandoski* and *J. Donald Murphy*, for defendant.

Reid, J. Defendant filed May 11, 1950, in circuit court, in chancery, a petition to modify a decree of divorce granted plaintiff April 24, 1948, and defendant prayed for an award of the custody of 3 young children of the parties to defendant husband instead of the award in the decree of divorce to the plaintiff wife. From an order denying him the custody, and dismissing his petition for such modification of the divorce decree, defendant appeals.

The 3 children of the parties are Nancy Ellen, born in 1942, George Thomas, born in 1943, and Patrick, born in 1945.

On the hearing of the petition, June 2, 1950, it developed that the real ground of the petition was a charge that plaintiff wife had been guilty of personal misconduct demonstrating her unfitness to be custodian of her children. She married, March 18, 1950,

Charles Beckholt, the father of her fourth child, Stephen, born March 20, 1950. The implied misconduct and plaintiff's relations with Beckholt, her present husband, prior to their marriage and beginning 2 months before a divorce granted Beckholt's first wife, constitute the entire ground for defendant's petition to deprive plaintiff of the custody of the children of the parties to this case. Defendant claims that the 3 children are embarrassed by their consciousness of the fact of the fourth child's having been begotten out of wedlock (though born in wedlock), he being constantly associated with them in the same household, and consciousness of a disgrace and reproach to their family in the community, resulting from the fact of Stephen's birth and circumstances preceding his birth.

Upon being examined by the court, plaintiff wife testified as follows:

"The home I am now living in with Mr. Beckholt, is the home where I lived prior to my divorce from Mr. Kruer, the same home. I have plans to continue to live in that home as husband and wife. As to my expectations to remain in Hart permanently, I would have to go wherever my husband's job would take him. So far as the present is concerned, I have no plans except to stay where I am now living, I don't know of any place else right now. Yes, I have stated that Mr. Beckholt is agreeable to having my 3 children remain there with me in my home. As to my own personal feeling about the mistake I have made, I am very sorry about it, and I certainly don't want to lose my children. I love them. I realize that the question that is before the court is whether I am a fit and proper person to continue to have the custody of those children. I understand that is the question, and that question has been asked by virtue of the fact that I had had improper relations with the man to whom I am now married before I was married to him. Yes, I understand that. Yes, I realize that

was a mistake. That was contrary to and in conflict with all the good moral teachings and religious teachings I had had in my own home, that is right. There is nothing about my environment as a child or during the time I have lived in Hart that would encourage me in that sort of thing. I can't help the past now.

"*The Court:* The future is entirely in your hands. Is there any danger, if these children are permitted to stay with you, of any repetition of such immoral acts on your part?

"*A.* There certainly won't be because I want to keep my children.

"*Q.* Or any other conduct unbecoming a Christian mother?

"*A.* No, sir; I would do anything to keep my children.

"*Q.* Do you assure me, if these children are allowed to remain with you, that you will do everything within your power to bring them up properly?

"*A.* I can assure you I hope they grow up to be a credit to the whole community and that I can be proud of them."

The testimony showed that aside from the matters with Mr. Beckholt prior to her marriage to him, plaintiff has been an excellent mother, and has cared for her children; they receive consistent Christian training and make good educational progress. Plaintiff is shown to be a good housekeeper and gives her children good physical and moral attention. She assured the court of the propriety of her future conduct and of her proper bringing up of her children and of her love for them.

Witnesses of excellent standing as good citizens of the city of Hart, where plaintiff and her family live, gave testimony that would show that plaintiff, notwithstanding her error, is well regarded in the community, and to the excellence of her care for her children.

The court continued the hearing until June 2, 1951, at which time the hearing was resumed, and testimony was given as to the happy home the children have with plaintiff, the good care that she gives them, and repeating in general, the good showing on plaintiff's behalf.

During the year's interval, defendant remarried and his present wife was a witness on behalf of defendant. She testified to the good and devoted care that she would give the children if their custody was given to defendant. The trial court indicated that if the children had been without a good and suitable home, it would be natural and logical to give the children to defendant.

The children have been with their mother from birth, and to take them from her now would be a very grave disturbance of their happy home life.

For a recent case involving a mother who has committed indiscretions, see *Cooley* v. *Cooley,* 329 Mich 91. When the case of *Smilgus* v. *Smilgus* was first before this Court, we reversed the order of the trial court giving a mother the custody of her daughter and gave the custody to a worthy father, where the mother had committed misconduct with one Losey: See *Smilgus* v. *Smilgus,* 323 Mich 149; but later the mother satisfied the trial court of her reformation and suitability for the custody, and we affirmed the later award by the trial court of the custody of the daughter to the mother: See *Smilgus* v. *Smilgus,* 328 Mich 19.

Plaintiff's remarriage and consistent and proper home life following the remarriage, point to the propriety of the court's order leaving the custody of the children with her, in view of the entire testimony of the excellent care she gives them and her promise of proper future conduct.

The order appealed from denied defendant's petition to award the custody of the children to him,

but without prejudice to his right to renew the petition in the event that future facts and conditions warrant his so doing, which order we affirm. No costs are asked for and none are awarded.

DETHMERS, BUTZEL, CARR, BUSHNELL, SHARPE, and BOYLES, JJ., concurred.

The late Chief Justice NORTH did not sit.