388 P.2d 230

Katherine Irene DEARDEN, Plaintiff and Appellant,

v.

Albert Errol DEARDEN, Defendant and Respondent.

No. 9952.

Supreme Court of Utah.

Jan. 14, 1964.

Kipp & Charlier, Salt Lake City, for appellant.

Cline & Cline, Milford, for respondent.

CROCKETT, Justice:

Plaintiff appeals from a judgment denying her a divorce and granting one to the defendant on his counterclaim and awarding him custody of their daughter, then 2½ years old. She contends that the evidence does not justify the trial court's action, but to the contrary requires a decree in her favor, and that she have custody of the child.

The parties married at Sugarville, Utah on May 26, 1958, and thereafter resided in Fillmore. Their daughter was born on December 24, 1960. During most of the marriage defendant worked as a truck driver which necessitated his being away from home a great deal, and the plaintiff worked as a waitress in the Ilene Cafe. It now appears that the marriage was not harmonious, and that it disintegrated by degrees until its final wreckage in this divorce proceeding.

The gravamen of plaintiff's grievance against the defendant is that he was cruel to her: in telling her that he did not love her; that he did not want her around; and that she was mentally unbalanced and should see a psychiatrist. On cross-examination he admitted that he "may have" told her that he "wanted for a long time to get rid of her," and that the only reason he

stayed is that he felt like he was obligated to her. He charged that plaintiff went to the arms of another man, a cook at the cafe where she worked, and committed adultery. The trial court found the latter to be true and based the decree upon it.

▮▮ It is apparent that, as is usually the case, neither party was without fault in contributing to the increasing difficulties which finally resulted in the necessity of terminating the marriage. Where the parties both felt that the other's faults and failings in their relationship with each other were of such consequence as to destroy the purpose of marriage and make further living together intolerable, and the trial court regarded the conduct complained of as of sufficient gravity to warrant the granting of a divorce under our statutes, the wise and practical course was that followed in granting a divorce to the party which, in the court's judgment, was least to blame in causing the failure.[1] Inasmuch as it is obvious that this was the necessary end, we can see no useful purpose in being unduly concerned as to which party was granted the divorce. By giving the traditional and required indulgence to its prerogatives, the court's finding is sustainable and the granting of the divorce to the defendant can be justified, as will appear below. We say this advisedly upon the basis of the record herein and in awareness of the correctness of the proposition advocated by the plaintiff that in divorce cases this court may review the evidence and may substitute its judgment for that of the trial court if that is warranted.[2] However, our conclusion is different as to the other problem, the awarding of this very young child to the father and depriving the mother of her custody.

▮▮ It is generally held that such misconduct as found against plaintiff, although of course censurable and not to be condoned, will not necessarily of itself deprive a parent of her child.[3] Social ideas have changed considerably since the time of the "East Lynne" concept when for moral transgression a wife was cast into outer darkness and deprived of all, including her children. This court has consistently declared that in custody matters the paramount consideration is the welfare of the child. The critical question for consideration is whether the conduct shown is of such a nature as to hazard her welfare and make it unwise that she be in her mother's custody.

A fellow employee at the Ilene Cafe testified that one evening in October, 1962, he went to the basement of the cafe, " * * *

1. See Steiger v. Steiger, 4 Utah 2d 273, 293 P.2d 418.
2. Ibid.

3. See Steiger v. Steiger, footnote 1 above; Stuber v. Stuber, 121 Utah 632, 244 P. 2d 650, and Cooke v. Cooke, 67 Utah 371, 248 P. 83.

flipped on the light" and that plaintiff and her alleged paramour were "standing there in the store room," and that their clothing was somewhat disarranged. This, coupled with the fact that shortly thereafter the man threatened the witness if he should tell anyone, seems to have caused him to suspect them of illicit intimacy. He was quite insistent that this incident occurred during the deer season (the last 10 days of October, 1962,) and while the plaintiff was still employed there. Tending to discount this is the fact that the plaintiff ceased working at the cafe in September.

In October plaintiff moved to Salt Lake City with her child, where she rented an apartment and found employment in another cafe. Defendant hired private detectives who watched her from December 27, 1962, to January 14, 1963. During that time they observed the plaintiff and her suspected paramour at various times and places, singly and together: going in the house where plaintiff had her apartment in the evening and coming out in the morning, seeing them through the window in their bathrobes; sometimes driving together to the cafe, where they both worked. Notwithstanding plaintiff's protestations that the man never stayed at her apartment after 9 p. m.; and the fact that the detective admitted on cross-examination that he did not know of and did not watch a rear entrance to the place which could have been used for coming to or leaving the apartment house, the evidence and the fair inferences to be drawn therefrom, viewed in the light most favorable thereto, can be regarded as sustaining the trial court's findings.

■■ Accepting the findings as valid, there is no indication of anything base or depraved or erratic in plaintiff's attitude toward or treatment of her daughter or in her relationship with her.[4] On the contrary, there was testimony that the plaintiff was a "fine housekeeper" and a "very good mother." The trial court found that the plaintiff was "a neat and orderly housekeeper and there is no evidence that she has directly or intentionally mistreated the child." She has demonstrated that she loves her daughter by caring for her and providing for her needs. This is, of course, but natural to expect and is the reason for the universally recognized presumption that it is for the best interest and welfare of a child of such tender years to be with her mother.[5] In such instance the mother's right to custody should not be denied unless

---

4. In the recent case of McBroom v. McBroom, 14 Utah 2d 393, 384 P.2d 961, relied on by defendant, while immorality was involved, erratic behavior was manifest in the attitude toward and treatment of the children which was deemed to hazard their welfare.

5. See cases in footnote 3 above and also Briggs v. Briggs, 111 Utah 418, 181 P. 2d 223.

it is shown that she is such an immoral, incompetent or otherwise improper person that it would be contrary to the child's best interest and welfare to be in her custody. We can see nothing in the situation shown here to warrant such a conclusion. Accordingly, taking the child from the mother and awarding her to the father was not justified, and should be changed. Reasonable rights of visitation should be provided for the defendant. There can be no doubt that after the troubles that have passed between these parties, the sharing of parental privileges and responsibilities to their child presents grave difficulties. Nevertheless, each must recognize the parental rights of the other so that the child will, to the highest possible degree, obtain the benefits of a loving and respectful relationship with both plaintiff and defendant, and incidentally, with their families.

The decree granting the divorce to the defendant on his counterclaim is affirmed. But as to the custody of the child, it is ordered modified and the custody granted to the plaintiff. The case is remanded for fixing of reasonable rights of visitation for the defendant, and determination of a proper amount to be paid by him for the support of the child. The parties to bear their own costs.

HENRIOD, C. J., and McDONOUGH, CALLISTER and WADE, JJ., concur.