493 P.2d 928

**Carolyn K. WACKERMAN,[1] Appellant,**

v.

**Arnold (Joe) WACKERMAN, Appellee.**

**No. I CA–CIV 1532.**

Court of Appeals of Arizona,
Division 1,
Department A.

Feb. 16, 1972.

1. Although remarried at the time of the entry of the order in question, we have retained her former married name in the caption.

Robert A. Chard, Phoenix, for appellant.
Donald J. Kenney, Phoenix, for appellee.

STEVENS, Presiding Judge.

There was a formal written order changing the custody of a 3½ year old child and this is an appeal from that order. There must be a better way to handle these difficult child custody problems, but we are not in a position to suggest a reasonable alternative solution.

The principals have each experienced three marriages. Because of the many names involved, we will refer to the parties before this Court as the father, the mother, and the child.

Some years ago the father married his first wife. A son was born to the marriage. The marriage ended in divorce and the first wife remarried.

The mother, at the age of 16, experienced her first marriage. It was short-lived, ended in divorce and no children were born from that union.

The father was born on 19 December 1923. The mother was born on 17 January 1946. They were married to each other on 8 September 1964. The child, a son, was born on 16 March 1966. The father filed his complaint for divorce in Maricopa County which complaint was assigned cause number D–97970, the complaint having been filed on 1 August 1967. He sought a decree of divorce and the custody of the child. The wife filed an answer and a counter-claim for divorce wherein she sought custody of the child. The file contains a two-page report from a psychiatrist relative to the wife. The report is dated prior to the final hearing of the divorce action. The file also contains an 11-page, single-spaced, legal size paper report by a Superior Court social worker relative to the father, the mother and the child. Numerous persons were interviewed as reflected by this report. The social worker's report was dated prior to the final hearing of the divorce action. The divorce action was heard by Commissioner James S. Riggs on 31 October 1967. Fourteen witnesses were sworn and testified. There was a stipulation as to the division of the property of the parties including a provision whereby the house trailer which the father and mother had used as their residence was to be awarded to the mother. The trial court approved the stipulation. The decree of divorce was signed and filed on 14 November 1967. The decree dissolved the marriage and neither was "awarded" a divorce. This form of decree is recognized by our Supreme Court in the case of Brown v. Brown, 38 Ariz. 459, 300 P. 1007 (1931). The custody of the child was awarded to the mother with reasonable visitorial privileges to the father who was ordered to pay $65 a month as and for child support. At the time of the marriage and at all times subsequent thereto, the principal residence of the father and of the mother has been Wickenburg, Arizona.

The mother's parents, she being an adopted child, and her younger adopted brother also lived in Wickenburg. During the period of the marriage the mother's parents had extensive contacts and associations with the child.

For a period of time after the divorce and though the exact dates are not wholly clear, apparently in late 1968 and early 1969, the mother worked as a waitress in Glendale, Arizona, a city approximately 45 miles from Wickenburg. The child remained in Wickenburg with his maternal grandparents and was frequently visited by the mother. From and after about 1 May 1969 the mother lived in Wickenburg. This date was the approximate date that the mother's parents sold their home and, "as a temporary measure", moved into the mother's trailer so that for a time those who resided in the trailer were the mother, the child, the mother's parents and the 17-year old brother of the mother.

The father married his third wife on 4 June 1968. The exact date of the birth of the third wife is not completely clear from the record and this Court estimates that the probable year of her birth was the year 1943. She underwent a hysterectomy in January or February of 1969. This was her second marriage. Her first marriage was in 1962, a daughter was born of that marriage in 1963 and she was divorced in 1964. Although she lived in Wickenburg as did the paternal grandmother of the daughter, it was clear to the paternal grandmother that she was not welcomed.

The father worked as a cook and manager of a Wickenburg restaurant. After the marriage to his third wife she also worked in the restaurant, working approximately four nights a week from six in the evening to ten in the evening during which periods of time the daughter was with the third wife's mother.

The mother met her third husband while she was working in Glendale. He had been married and divorced. At the time of this meeting the mother and her third husband were both divorced persons. Five children were born of the third husband's first marriage and following the termination of that marriage by divorce he was

paying $300 a month child support. In March 1969 the mother was aware that the prospective third husband was the father of her unborn child. It was thereafter that the mother returned to the family trailer in Wickenburg. The mother and her third husband were married on 12 September 1969.

During the marriage of the father and the mother he held two jobs. After the father's third marriage he held but one job and the combined income of the father and his third wife was less than his income during his marriage to the mother. The father and his third wife, largely with borrowed funds, purchased and furnished a good and modest home in Wickenburg. They owed debts in addition to the indebtedness on the home.

The third husband of the mother earned his livelihood by driving a truck between Arizona and California. By virtue of his driving to the greatest extent available to him, his income was substantially the same as the father's income during the marriage to the mother, subject of course to his obligation to pay child support. At the time of the hearing in question he had substantial savings. The father did not pay child support to the son of his first marriage nor did his third wife receive child support for the daughter born of her first marriage.

On 3 September 1969 the father filed a petition for modification of the divorce decree whereby he sought the custody of the child and it is this petition which is now in question. All had not been serene from the time of the divorce on 14 November 1967 to the issuance of the order to show cause following the filing of the above petition for modification. In January 1968 by way of garnishment, the mother collected some of the monies which the father was obligated to pay under the decree. Generally, the father lived up to his financial obligations as specified in the decree. The application for the writ of garnishment was accompanied by the mother's petition seeking among other matters a television set which had been awarded to the mother and which the father continued to retain. At the time of the hearing in question the television set was used by him and his third wife.

The mother visited in California for a period of time without taking the child with her. Generally no problems arose as a result of the father's exercise of his visitorial privileges. Frequently someone other than the father called for the child. At one time he secured temporary possession of the child and failed to return the child causing considerable anxiety on the part of the mother. A petition for writ of habeas corpus was prepared but not filed in that she finally located the child and restored the child to her custody through the intervention of law enforcement officers.

The petition for modification here in question was heard on the 9th, 16th and 22nd days of October 1969. The mother's child by her third husband was born during this interval of time. At the conclusion of the hearing the matter was taken under advisement. On 16 February 1970, the Commissioner entered a minute entry order containing extensive findings of fact and conclusions of law. It was not until 17 July 1970 that the formal written order amending the decree of divorce vesting the custody of the child in the father with visitorial privileges in the mother was filed. This appeal followed.

## PRE-DIVORCE EVIDENCE

The Commissioner generally sustained objections to any evidence offered as to the pre-divorce situation of the father and the mother. It is true that the parties may not retry the divorce case in a post-divorce proceeding. Parties may not impeach the prior orders of the court in a modification proceeding. On the other hand some reasonable latitude must be allowed in order to establish the necessary evidence of change of circumstances and conditions.

## RULINGS

In the opinion of this Court counsel for the father was unduly technical in his objections to questions and the Commissioner was overly technical in his rulings, thus prolonging the hearing. Not every question which is capable of a "yes" or a "no" answer should be technically classified as a leading question. Udall, Arizona Law of Evidence, § 44 (1960). When an attorney is examining his own client or his own witness on direct examination, and particularly when the matter is being tried without a jury, reasonable latitude should be allowed to counsel in the interest of expediting the proceedings.

The mother offered a series of photographs depicting the child at the mother's birthday party on 17 January 1969 and the child's birthday party on 16 March 1969. The mother testified as to the photographs furnishing the foundation as to time, place, persons present and that the photographs were a reasonable representation of the matters portrayed thereby. She was unable to say which member of her family took each of the several photographs. The husband's objection as to foundation was taken under advisement and was never ruled upon. These technical objections in relation to the photographs occupied several pages of the reporter's transcript. In our opinion the photographs were admissible. Udall, Arizona Law of Evidence, §§ 131 and 132. Judicial officers, be they judges, or commissioners, should not take routine matters under advisement but should rule promptly. When a matter is taken under advisement it should be ruled upon promptly.

The father's attorney, in response to an objection, stated that he would prove numerous immoral acts on the part of the mother, and her objection was overruled. The mother moved to strike the father's counsel's remark and the ruling was simply "Proceed, counsel." An examination of the entire record shows a failure on the part of the father's counsel to produce any evidence of any relationship between the mother and any male other than with her third husband. This conduct on the part of counsel for the father is not approved.

## FINDINGS OF FACT

Rule 52(a) of the Rules of Civil Procedure, 16 A.R.S., provides in part:

"Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of witnesses."

The Commissioner entered 30 findings of fact. There are some portions thereof which are not supported by the record. We will not lengthen this opinion by a detailed analysis thereof. Upon a review of the findings of fact and a study of the entire record, we have concluded even without an analysis of the findings of fact that they and the overall record do not justify a change in custody. In Tuab Mineral Corporation v. Anderson, 3 Ariz. App. 512, 415 P.2d 910 (1966), the Court stated:

"This court can set aside the findings of fact only if they are clearly erroneous. 16 A.R.S. Rules of Civil Procedure, Rule 52(a). But even if supported by evidence, we can set the findings aside if definitely and firmly convinced, on the basis of the entire evidence, that a mistake has been committed. Merryweather v. Pendleton, 91 Ariz. 334, 372 P.2d 335 (1962)." 3 Ariz.App. at 514, 415 P.2d at 912.

## BASIC PRINCIPLES

The Arizona appellate decisions in relation to child custody in divorce cases are numerous. We cite but a few and without extensive quotations state several of the basic principles found therein.

In Grimditch v. Grimditch, 71 Ariz. 198, 225 P.2d 489 (1951), the Arizona Supreme Court recognized that the

primary concern is the welfare of the child. The ruling of the trial court will be affirmed in the absence of a clear showing of an abuse of discretion. The courts are guided by the circumstances and conditions which exist at the time of the trial. The guilt or innocence of the parents is not controlling. This case was modified on rehearing, 71 Ariz. 237, 226 P.2d 142 (1951), in relation to a matter which is of no concern in connection with the opinion now in question.

Andro v. Andro, 97 Ariz. 302, 400 P.2d 105 (1965), contains one of the more complete statements of the principles which are the guidelines in child custody cases. Therein the trial court modified a previous child custody decree and the Supreme Court stated that it must be shown that there were such changes as materially affected the welfare of the child. The best interest of the child controls and a change of custody must enhance the child's welfare. Where there is a clear abuse of discretion in ordering a change, the change order will be reversed. Remarriage of one of the parties is not alone enough.

 In Dunbar v. Dunbar, 102 Ariz. 352, 429 P.2d 949 (1967), our Supreme Court stated that the welfare of the child controls as against the wishes of the parents. The Court recognized the declared public policy that a child of tender years will usually be placed in the custody of the mother.

In Anonymous v. Anonymous, 7 Ariz. App. 63, 436 P.2d 157 (1968), the Court of Appeals reversed a decree of divorce insofar as the decree awarded the children to the mother and the matter was returned to the Superior Court for a rehearing on that phase of the litigation. The trial court, after the remand, again awarded the children to the mother. On appeal, the Arizona Supreme Court in Anonymous v. Anonymous, 106 Ariz. 284, 475 P.2d 268 (1970), affirmed the trial court in again awarding the children to the mother, pointing out that the mother's indis-

cretion did not take place in the presence of the children.

 In connection with the case now under consideration, the mother became pregnant by her later third husband after both parties had been divorced and under circumstances as could not have affected the morals and well-being of the very young child. They were later married to each other.

The child has at all times been well cared for, healthy, reasonably well clothed and bright. For a time the home conditions in the trailer in mid-1969 were crowded and, as found by the Commissioner, not well maintained. At the time of the hearing, these had been substantially modified and improved and the living quarters expanded. The presence of the mother's parents and her brother are a temporary situation, even though the temporary situation extended over a period of months. We cannot but conclude that there was an abuse of discretion in the order changing custody. In this matter the effective date of the order was superseded pending the appeal. While we have been critical of certain matters set forth under the heading "Rulings", our decision to reverse is not based upon those rulings.

## ATTORNEY'S FEES

 The record discloses extensive preparation by the mother's attorney. He attempted to introduce his time records and other evidentiary matter relating to his services during the examination of the mother while she was on the witness stand. A foundational objection was properly sustained as it was obvious that she did not have adequate detailed knowledge of the services performed by her attorney. The attorney proposed that after the Commissioner had reached a decision as to the custody matter, that he then be permitted to present evidence on the issue of attorney's fees. The Commissioner agreed. Without affording the opportunity to present such evidence, the Commissioner fixed

the attorney's fees in the sum of $500 and allowed the taxation of the mother's cost against the father. It is apparent from reading the minute entry order that the Commissioner did give consideration to the exhibits which had been offered in evidence and which had not been admitted.

We recognize that seldom does a trial court's award of attorney's fees to the mother's attorney represent a sum which is reasonable compensation with the labor which has been expended by the attorney. The man's financial situation is often a vital factor and the amount collected from the man is not in payment of the fees due to the woman's attorney but is a credit against the account. We do not approve the failure of the Commissioner to afford the mother's attorney the opportunity of a hearing in relation to his fees. On the other hand we do not believe that the allowance was so disproportionate in relation to the father's reasonable ability to pay that this matter requires a reversal as to that area of the appeal.

### MOTHER'S ORDER TO SHOW CAUSE

The mother countered the father's petition for modification with a petition seeking to increase the monthly allowance for child support. We agree with the Commissioner that the evidence did not support the granting of her petition even had the father failed in his efforts to change the custody.

The issuance of the mandate in connection with this matter will constitute an affirmance of the award as to the attorney's fees and costs; and will constitute a vacation of the written order of 17 July 1970 in all other respects. The decree of divorce dated the 14th of November, 1967, is reinstated.

CASE and DONOFRIO, JJ., concur.