LINDA JEAN KRABEL, Plaintiff-Appellee, v. JOSEPH LAWRENCE KRABEL, Defendant-Appellant.

Fourth District   No. 17157

Opinion filed December 18, 1981.

LONDRIGAN, J., dissenting.

James T. Friedman, of Schiff, Hardin & Waite, and Errol Zavett, of Ehrlich, Bundesen & Zavett, both of Chicago, and Wayne S. Jones, P. C., of Paris, for appellant.

Laurence W. Grabb, of Ryan, Grabb, Cini & Bennett, of Mattoon, for appellee.

JUSTICE WEBBER delivered the opinion of the court:

The marriage of the parties was dissolved in 1977 in the circuit court of Coles County. Custody of two minor children was awarded to the petitioner (Linda) with rights of visitation in the respondent (Joseph). In August 1980, Joseph filed a petition for change of custody based upon Linda's cohabitation with her paramour. After extensive evidentiary hearings, the trial court denied the prayer of the petition, and this appeal followed.

The resolution of this case presented difficult questions for the trial court and even more complex ones for this court, since it falls into an unresolved area between the prior authorities of *Jarrett v. Jarrett* (1979), 78 Ill. 2d 337, 400 N.E.2d 421, and *Nye v. Nye* (1952), 411 Ill. 408, 105 N.E.2d 300.

The evidence is clear that Linda was engaged in an illicit liaison, although, unlike *Jarrett*, her suitor did not live in her home. His arrival was

generally in the early evening and his departure in the very early morning about 3 a.m. These visits were on a fairly regular basis of two to three times per week. The children were at home during such times. On weekends when the children were visiting with their father, Linda went to her suitor's home, about 45 miles away, and spent the weekends there. There was also some evidence that on a few occasions she had taken the children with her to his home.

One of Linda's principal contentions is that under the circumstances just outlined and because of the tender ages of the children (6 and 8 years at the time of hearing), the affair is discreet, the children would be unaware of its nature, and there is no adverse effect upòn them. She distinguishes *Jarrett* wherein the mother was quite open with the children regarding her relationship with her companion.

On the other hand, there is also evidence that during visitation periods Joseph has specifically called the children's attention to their mother's conduct, has questioned them at length about her activities, and has inculcated in them that what she was doing was wrong. A clergyman who testified on Joseph's behalf described him as "godly." In its excellent memorandum opinion, the trial court condemned Joseph's conduct in this regard and indicated that the children would probably not have been aware of Linda's relationship except for Joseph's prompting.

There is thus presented the nettlesome question as to whether one seeking a change of custody based upon the misbehavior of the custodial parent may use as a predicate therefor his own misbehavior in causing emotional trauma in the children. There was evidence in this regard of such trauma and its cause.

Joseph appears to be extremely selective in his choice of the elements in the Decalogue. It may well be asked whether one is moral by being very sanctimonious about the carnal aspects of that great pillar of ethical conduct, while at the same time teaching his children to dishonor their mother. There is no indication that this attitude would change in the event of change of custody to him.

Thus the dilemma: each parent, otherwise fit, but each guilty of breaches of fundamental morality, and as always, the innocent victims, the children, are the principal sufferers.

The *Jarrett* decision was recently analyzed and discussed at length in *Brandt v. Brandt* (1981), 99 Ill. App. 3d 1089. We agree that *Jarrett* did not proclaim a *per se* rule, and any further comment by us would be only epexegetical. The instant case is not parallel to *Brandt* on the facts in that the Brandt children were of sufficient age as to make a studied selection under the supervision of the trial judge. We do find the following language from *Jarrett* particularly appropriate:

"It is true that, as Jacqueline argues, the courts have not denied

custody to every parent who has violated the community's moral standards, nor do we now intimate a différent rule. Rather than mechanically denying custody in every such instance, the courts of this State appraise the moral example currently provided and the example which may be expected by the parent in the future. We held in *Nye v. Nye* (1952), 411 Ill. 408, 415, that past moral indiscretions of a parent are not sufficient grounds for denying custody if the parent's present conduct establishes the improbability of such lapses in the future. This rule focuses the trial court's attention on the moral values which the parent is actually demonstrating to the children." 78 Ill. 2d 337, 347, 400 N.E.2d 421, 424.

The solution to the instant case, in our opinion, lies in determining which course of improper conduct by the parents is more susceptible of correction. We believe it is that of Linda.

There was an indication in the record that she planned to marry her paramour and in his order the learned trial judge stated that in the event she did not do so, and if the relationship continued as in the past, he would not hesitate to reconsider the question of custody. If she has in fact married, or alternatively, broken off the illicit affair, custody will be governed by the rule of *Nye*, as set forth in *Jarrett*, and of *Rippon v. Rippon* (1978), 64 Ill. App. 3d 465, 381 N.E.2d 70, also commented upon in *Jarrett*. On the other hand, if no change has taken place, *Jarrett* must prevail. We do not believe that any feasible means exist whereby Joseph's attitude may be modified, or even attenuated.

It remains to be decided what disposition is to be made of this case in this court. An outright reversal would reward Joseph for defaming and denigrating Linda to the children. An outright affirmance would allow Linda to escape the force of the *Jarrett* rationale by indicating only an intent to mend her ways and would invoke the two-year waiting period mandated by section 610 of the Illinois Marriage and Dissolution of Marriage Act. (Ill. Rev. Stat. 1979, ch. 40, par. 610), even though we do not believe that the trial court's decision was against the manifest weight of the evidence nor did it make any error of law.

Supreme Court Rule 366(a)(5) (73 Ill. 2d R. 366(a)(5)) permits this court to "* * * make any order * * * that the case may require." We therefore vacate the order of the trial court and remand the cause with directions to consider events which have occurred since its entry. If Linda has married, or has broken off her liaison, and her present conduct establishes the improbability of such lapses in the future, then the court should re-enter the order appealed from, with such safeguards against the conduct of Joseph as may seem workable, including, if necessary, suspension of rights of visitation. On the other hand, if no reformation has occurred on Linda's part, the court should enter a new order awarding

custody to Joseph, subject to his agreement to voice his complaints about Linda in court only. Under either order, the court may consider judicial supervision pursuant to the provisions of section 608(b) of the Illinois Marriage and Dissolution of Marriage Act. Ill. Rev. Stat. 1979, ch. 40, par. 608(b).

Order vacated and cause remanded with directions.

TRAPP, J., concurs.

JUSTICE LONDRIGAN, dissenting:
I would affirm the order of the trial court.

Sexual liaisons are a factor to be considered with all the surrounding circumstances and not *the* factor. The trial court in its opinion set out at length its factual findings, distinguished this case from *Jarrett v. Jarrett* (1979), 78 Ill. 2d 337, 400 N.E.2d 421, and correctly found *Rippon v. Rippon* (1978), 64 Ill. App. 3d 465, 381 N.E.2d 70, to apply. *Rippon* stated:

> "Although the respondent admitted having sexual intercourse with Robbins before she married him and with her present boyfriend after divorcing Robbins, indulgence in moral indiscretions alone is not grounds for a change of custody where the children are leading a normal life. [Citation.] * * * Only when an open adulterous relationship exists with no possibility of marriage, as when the paramour is and remains married to another woman, is there sufficient grounds to remove custody from the mother." 64 Ill. App. 3d 465, 468, 381 N.E.2d 70, 73.

The trial court herein stated:

> "Section 610 of Chapter 40 indicates the public policy established by this section is against a change of custody unless there is a strong showing that a change is necessary for the best interest of the children. * * *
>
> The Court finds that Petitioner has failed to prove [that] a modification of the custody provisions of the decree of divorce is warranted at this time. The Court further finds that a change of custody would not serve the best interests of the children. The harm resulting to the children by a change of custody would be far greater, considering their ages, than allowing them to remain with their present custodian."

The majority opinion herein held that the trial court's decision was not against the manifest weight of the evidence nor did it make any error of law.